IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. 4:06-CR-188-Y |
| | § | |
| SCOTT EVERETT BREWER (22) | § | |

ORDER GRANTING THE
GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

Pending before the Court is the government's motion [doc.# 1036] for summary judgement regarding the petition [doc. #818] of Kristina Brewer ("Kristina"). Having reviewed Kristina's petition, the government's motion and the response thereto, the Court concludes that Kristina has failed to establish an interest in the property subject to forfeiture and, therefore, GRANTS the motion for summary judgment.

I. BACKGROUND

On December 21, 2007, defendant Scott Everett Brewer ("Scott") pleaded guilty to counts one and two of the superseding information pending against him. Count two, which alleged a violation of 18 U.S.C. § 1956(a)(1)(B)(i), was accompanied by an allegation of forfeiture of real property located at 1119 Windmere Way, Allen, Texas 75013 ("the Windmere property") pursuant to 18 U.S.C. § 982(a)(1). Forfeitures under § 982 are governed by 21 U.S.C. § 853. According to the government, the total amount due on closing was $364,997.84, with $280,000 financed through a mortgage with Homecomings Financial, LLC. On March 4, 2008, this Court entered a preliminary order of forfeiture of the Windmere property. Kristina, wife of defendant

Scott, filed a petition with this Court seeking adjudication of her interest in the Windmere property, pursuant to 21 U.S.C. § 853(n). The government then filed a motion for summary judgment as to Kristina's petition on August 22, 2008. In its motion, the government contends that the money used to purchase and make improvements to the Windmere property was derived from the criminal activity of Scott and his co-defendants. Specifically, the government points to the following:

1) A $10,000 check, dated June 26, 2005, used as earnest money for the purchase of the Windmere property. According to the government, the check was drawn on Kristina's personal bank account and preceded by cash deposits far in excess of the Brewers' legitimate earnings.

2) Two cashier's checks totalling $20,500, both dated July 22, 2005, used as additional earnest money. Scott admitted in his factual resume in support of his plea of guilty that these checks represented proceeds from his crimes.

3) A cashier's check of $53,347.04, dated July 29, 2005, paid to Compass Bank on the day of closing on the Windmere property. The government alleges this check was purchased with cash withdrawn from Kristina's account after two large cash deposits and the deposit of a $40,000 check from Scott's co-defendant, Universal Lime. In her factual resume in support of her guilty plea, Scott's co-defendant, Julia Ann Duran, states that "almost

2

all" of the cash deposited into Universal Lime's accounts were drug proceeds.

4) Payment of $43,885 for the installation of a surveillance and media system at the Windmere property. Scott admits in his factual resume that this money was derived from his criminal activity.

5) Payment of $40,350 for the installation of a pool at the Windmere property consisting of $16,350 in cash and various checks.

6) Mortgage payments made before Scott's arrest were preceded by large cash deposits into Kristina's account. Additionally, mortgage payments made after Scott's arrest have come from funds received by Kristina and her family from Guadalupe "Lip" Soto Jr. Soto is an associate of Scott whom the government believes was disbursing Scott's illegally obtained funds. As of May 31, 2008, $250,203.33 remained outstanding on the mortgage.

II. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden of demonstrating that it is entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need not produce evidence showing the absence of a genuine issue of material

fact with respect to an issue on which the nonmovant bears the burden of proof.  Rather, in that situation, the moving party need only point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmovant's claim.  *See id.* at 323-35.

When the moving party has carried its summary-judgment burden, the nonmovant must go beyond the pleadings and by its own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e).  This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In making its determination on the motion, the Court must look at the full record in the case.  *See* Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner'

in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

III. Forfeiture Under 21 U.S.C. § 853

Pursuant to 21 U.S.C. § 853, a person convicted of certain offenses, including a violation of 18 U.S.C. § 982, must forfeit to the government any property derived from the proceeds of the offense. *See* 21 U.S.C. § 853(a)(1). After an order of forfeiture is entered, the United States must provide notice of the forfeiture by publication, and may provide direct notice to persons known to have an alleged interest in the property subject to the order of forfeiture. *See* 18 U.S.C. § 853(n)(1). Third parties asserting an interest in the property may then petition the court for an adjudication of that interest. *See* 18 U.S.C. § 853(n)(2).

Under 21 U.S.C. § 853, only two classes of third parties may assert a claim to property subject to a forfeiture order. *United States v. White*, No. 06-30797, 2007 U.S. App. LEXIS 26211, at *6 (5th Cir. November 8, 2007) (citing *United States v. Lavin*, 942 F.2d 177, 185 (3d Cir. 1991)); *United States v. Hooper*, 229 F.3d 818, 822 (9th Cir. 2000). First, under section 853(n)(6)(A), petitioners who had "a legal right, title, or interest" in the property "vested in the petitioner rather than the defendant" or superior to that of the defendant at the time of the commission of the criminal acts giving rise to the forfeiture may assert an interest in the property to be

5

forfeited. *See* 21 U.S.C. § 853(n)(6)(A); *White*, 2007 U.S. App. LEXIS 26211, at *6. Second, under section 853(n)(6)(B), "'bona fide purchaser[s] for value of the right, title, or interest in the property' who had no knowledge of" the criminal activity giving rise to the forfeiture may assert an interest. *See* 21 U.S.C. § 853(n)(6)(B); *White*, 2007 U.S. App. LEXIS 26211, at *6.

In evaluating whether a petitioner falls within the classes defined by section 853(n)(6), the property rights asserted by the petitioner are first defined pursuant to state law. *United States v. White*, No. 06-30797, 2007 U.S. App. LEXIS 26211, at *6 n.7 (5th Cir. November 8, 2007)(citing *United States v. Lester*, 85 F.3d 1409, 1412 (9th Cir. 1996)); *U.S. v. East Carroll Correctional Sys.,* 14 F. Supp. 2d 851, 853 (W.D. La. 1998)(describing the analysis under section 853). *See also United States v. Wyly*, 193 F.3d 289, 304 (5th Cir. 1999)(evaluating property rights under state law in the context of 21 U.S.C. § 853). Whether the property interests defined by state law are subject to forfeiture is then evaluated under federal law. *White*, 2007 U.S. App. LEXIS 26211, at *6 n.7; *East Carroll*, 14 F. Supp. 2d at 853.

When performing a section 853 analysis on assets jointly held by a married couple, a court must be careful to separately analyze the alleged interest of the defendant and that of the petitioning spouse. *See United States v. Kennedy*, 201 F.3d 1324, 1329-30 (11th Cir. 2000) (noting the forfeiture of a defendant husband's interest

6

in a piece of property held with his wife as tenants by the entirety is a different issue than the wife's interest as a third party petitioner). *See also United States v. Lot 6 Block 4 Lakewood Oak Estates*, 260 Fed. Appx. 699, 700 (5th Cir. 2007) (approving of district court's ruling that partial payment for property with legitimate funds entitled spouse to community property interest equal to one-half of the legitimate payment). In light of this, the complexity of Texas community property law, and the interrelation of state and federal law in the context of a section 853 analysis, the court will address the alleged interest in the property as affected by the payment of earnest money, closing costs, mortgage payments, and payment for improvements ("the payments") together first. The Court will then address the affect of the financing arrangement separately.

### A. Interest Created by the Payments

As to whether Kristina falls within the class of petitioners defined by section 853(n)(6)(A) in relation to the payments, the government makes two arguments. First, the government asserts that because funds used for earnest money, to make a down payment, for closing costs, and for improvements came from Scott's criminal activity, Kristina obtained no interest in the Windemere property. Second, the government argues, even if Kristina obtained an interest in the property, her interest came into being after illegal funds were used to facilitate the purchase of the property. Therefore,

7

the government contends, Kristina's interest was not vested or superior to defendant's interest at the time of his criminal acts.

As to the government's arguments under section 853(n)(6)(A) relating to the payments, this Court faces a situation very similar to that addressed by the United States Court of Appeals for the Ninth Circuit in *United States v. Hooper*, 229 F.3d 818 (9th Cir. 2000). In *Hooper*, the wives of men convicted of drug trafficking asserted an interest in certain property pursuant to 21 U.S.C. § 853(n), and claimed that under California law, any property acquired by a spouse during marriage is community property. The Ninth Circuit noted that no California statute or decision excluded property obtained with proceeds of illegal activity from community-property classification. *Hooper*, 229 F.3d at 820. Without deciding the validity of the underlying property interest asserted by the petitioners, the Ninth Circuit decided the case solely on the basis of section 853. Looking to section 853(n)(6)(A), the court interpreted the temporal language "at the time of the commission of the acts which gave rise to the forfeiture" to apply to both "vested in the petitioner rather than the defendant" and the alternative "or was superior to any right, title or interest of the defendant." *Id.* at 821 (citing 21 U.S.C. § 853). Because the crime that generated the proceeds used to purchase the forfeitable property necessarily preceded the purchase itself, the court held that the petitioners were not qualified to assert their interest under section 853(n)(6)(A). *See id.*

In all ways relevant to the motion before this Court, the Texas law that would govern the property interest asserted by Kristina is identical to the California law in *Hooper*. *Compare id.* at 820 (citing California Family Code § 760) *with* Tex. Fam. Code Ann. §§ 3.002 & 3.003 (Vernon 2007). Under Texas law, all property acquired during marriage is presumptively community property, subject to rebuttal by clear and convincing evidence. *See* Tex. Fam. Code Ann. §§ 3.002 & 3.003 (Vernon 2007). Further, just as in *Hooper*, this Court has not discovered any Texas law excluding property obtained with the proceeds of illegal activity from community-property classification.

However, again as in *Hooper*, this Court need not decide whether the State of Texas would recognize such a property interest. As the party who would bear the burden of persuasion at a hearing on this matter, Kristina bears the burden of coming forward with some evidence as to her claimed interest in the property. *See* 21 U.S.C. § 853(n)(6)(noting that the court is to amend its order of forfeiture if petitioner establishes its claim under subsections (n)(6) by a preponderance of the evidence); *see Celotex*, 477 U.S. at 323-35. As discussed above, the government details the various payments made on the home and provides evidence that the source of the funds for these payments was the proceeds of Scott's criminal activity. This evidence includes Scott's own admissions, the admissions of his co-defendants, and an analysis of Kristina's bank account demonstrating that money deposited into the account far exceeds the Brewers'

legitimate income. *See United States v. Puma*, 937 F.2d 151, 157 (5th Cir. 1991)(noting that evidence of insufficient legitimate income to make a purchase is evidence that proceeds of criminal activity were used).

On the other hand, Kristina's response to the government's motion is filled with conclusory statements. She largely ignores the government's allegations and evidence. Moreover, at the hearing conducted on this motion, Kristina conceded that all payments made on the home to this point have been from Scott's illegal activity. Thus, she completely fails to create a fact issue regarding her alleged interest in the Windmere property. The rationale of *Hooper* dictates that, at least in regard to the payments, she is not a qualified petitioner under section 853(n)(6)(A). Because the proceeds used to make the earnest-money and closing payments on the Windmere property were generated by criminal activity that necessarily preceded the purchase of the property, title to the property, superior to that of Scott or otherwise, could not have vested in Kristina prior to such activity.

The Court notes that this conclusion is buttressed by section 853(c) as well. Under 853(c), title to property derived from the proceeds of the crime described in 853(a) vests in the government as of the commission of the crime. 21 U.S.C. § 853(c). Thus, the government's interest would have arisen prior to any interest held by Kristina.

For reasons similar to those already discussed, Kristina does not qualify as a bona-fide purchaser under section 853(n)(6)(B) in relation to the payments. Again, the Court need not decide whether the State of Texas would recognize the property interest asserted by Kristina. The language of section 853 leads this Court to conclude that it was meant to protect innocent third parties rather than parties who participate in the transaction by which a forfeiting defendant receives tainted property.

Section 853(c) provides that title vests in the government at the time of the commission of the crime giving rise to the forfeiture. The section goes on to state that if the property subject to forfeiture is "*subsequently* transferred" the transferee may seek to establish that he is a bona-fide purchaser pursuant to section 853(n). *See* 21 U.S.C. § 853(c)(emphasis added). This would seem to exclude someone who, as is the case with Kristina, receives his alleged interest in the property subject to forfeiture as a contemporaneous co-purchaser with a forfeiting defendant. At least two courts of appeals have interpreted the bona-fide-purchaser provision in a manner that precludes a co-purchaser, such as a spouse, from claiming bona-fide-purchaser status. *See United States v. Soreide,* 461 F.3d 1351, 1356 (11th Cir. 2006) (stating that bona-fide-purchaser section "exists only to protect subsequent purchasers of *the defendant's interest*") (internal quotations and citations omitted) (emphasis in original); *United States v. Reckmeyer*, 836 F.2d 200, 208 (4th Cir. 1987)

(interpreting the statute to reach "persons who [gave] value *to the defendant* in an arms'-length transaction") (emphasis added). Therefore, Kristina does not qualify as a bona-fide-purchaser of the Windmere property.

B. Interest Created by Mortgage

The Court now turns to the effect of the mortgage in this case, which presents a more difficult question in light of the interaction of state and federal law. As noted above, in Texas, any property acquired during marriage is presumed to be community property, subject to rebuttal by clear and convincing evidence. *See* Tex. Fam. Code Ann. §§ 3.002 & 3.003. Property acquired on credit during marriage is presumptively acquired on community credit and is, therefore, presumptively community property. *See Broussard v. Tian*, 156 Tex. 371, 373, 295 S.W.2d 405, 406 (Tex. 1956). Thus, it may be argued that because the Brewers jointly executed a mortgage and note to finance the purchase of the Windmere property, Kristina obtained a community interest in the property to the extent of this financing.

However, the character of the title to property is determined at the date of the "inception" of the title; that is, the date a "right of claim to the property" is secured. *Dawson v. Dawson*, 767 S.W.2d 949, 950 (Tex. App.—Beaumont 1989, no writ); *Carter v. Carter*, 736 S.W.2d 775, 779 (Tex. App.—Houston [14th Dist.] 1987, no writ.). In regard to the purchase of real property, the inception-of-title

date is the date the earnest-money contract is entered into. *Carter*, 736 S.W.2d at 779 (earnest-money contract entered by husband before marriage caused property to be his separate property). As a result, any interest vested in Kristina would have had to vest at the time the earnest-money payment was made on the Windmere property.

But as discussed above, the earnest money was paid out of the proceeds of Scott's illegal activity. Thus, at the inception of title, rather than vesting in Scott or Kristina, title vested in the government under section 853. *See* 21 U.S.C. § 853(a) & (c). Kristina's later joining in the financing of the property could not change this. *See* 21 U.S.C. § 853(c); *United States v. Martinez*, 228 F.3d 587, 590 (5th Cir. 2000) (interpreting the relation-back provision of 18 U.S.C. § 1963, which is similar to 21 U.S.C. § 853(c), as cutting off the wife's right to property at the time the husband's illegal activity was committed). And while any payments made on the mortgage by Kristina from legitimate funds may have created an interest in the property in her favor, she has offered no proof of such payments. *See* 21 U.S.C. § 853(n)(6) (requiring third-party petitioners to establish their interest by a preponderance of the evidence); *Lot 6 Block 4 Lakewood Oak Estates*, 260 Fed. Appx. 699, 700 (5th Cir. 2007) (approving district court's determination of wife's property interest purchased mostly with the proceeds of illegal activity). Kristina, therefore, cannot claim to be either a bona-fide purchaser or a party with a vested or superior interest to that of the defendant

under section 853(n) based on the mortgage.

IV. Eighth Amendment

Kristina also claims that the forfeiture of the Windmere property would violate the Eighth Amendment's prohibition on excessive fines. However, under Fifth Circuit precedent, the forfeiture of the proceeds of illegal activity is never excessive. *See United States v. Betancourt*, 422 F.3d 240, 250-51 (5th Cir. 2005). Kristina has failed to come forward with any evidence that the Windmere property was obtained with funds other than those generated by her husband's illegal activity. Therefore, the forfeiture of the Windmere property does not violate the Eighth Amendment. *See United States v. Tencer*, 107 F.3d 1120, 1135 n.7 (5th Cir. 1997) (finding no Eighth Amendment violation in the context of a forfeiture where the party asserting such violation "provide[d] no persuasive analysis").

VI. Conclusion

For the reasons discussed above, the Court finds that Mrs. Brewer has failed to establish an interest in the Windmere property and concludes that the forfeiture of the property does not violate the Eighth Amendment. Accordingly, the Court GRANTS the government's motion for summary judgment. Because no valid petitions have been presented to the Court under section 853(n)(6), no amendment to the Court's order of forfeiture stated on the record at the September

10, 2008, sentencing of defendant Scott Brewer is necessary. It is, therefore, the final order of forfeiture.

SIGNED September 29, 2008.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE